Good morning, and may it please the Court. I'm Vita Alvey. I represent Mr. Charles Reed, the petitioner-appellant in this 2255 habeas proceeding. The question before the Court is whether Mr. Reed should have been resentenced as a result of the vacater of his prior felony conviction. The circumstances of this case, the unique circumstances of this case, cry out for a resentence. As the government has conceded, the district judge incorrectly found that the defendant the petitioner, Mr. Reed, was a prior, I'm sorry, was a career offender. Now, it is helpful when we're I disagree that he's a career offender, right? I'm sorry? You don't disagree that he's still a career offender even in the absence of the 20-year mandatory minimum? I do disagree that he's a career offender. You do? I disagree that he's a career offender, because under the guidelines, the there needs to be a distribution element in the convictions that were that Mr. Reed had been subject to, and there were no distribution elements in the criminal possession case. And in the 1992 felony possession of cocaine case, there isn't even any records that would establish or substantiate this arrest. Once the 1993 conviction was vacated and the indictment dismissed, I would argue that there were no longer any career offender cases that Mr. Reed should be subject to. Just to be clear, you do agree that he still has prior narcotics offenses which would be eligible or would have been eligible for citation in a prior felony information, but you disagree that under the guidelines he's a career offender? Quite frankly, I disagree that he would have been subject to prior felony based on these particular offenses. But what I would like to ask is whether he is or isn't subject to it. In fact, once the previous prior felony information has been vacated, is it now too late for the government to file another prior felony information, even if a prior felony was there? It has to be done before the trial, right? And there was a trial. And the government only submitted the 1993 conviction. And we certainly maintain that it is too late for the government now to suggest that he's a prior felon. And in point of fact, the district court was incorrect in finding that he was a career offender and incorrect in stating that he was subject to a 360-month-to-life prison term. Because under the guidelines, once there was no more career offender status, we pivot to a guideline of a criminal history category of four, and the guidelines were greatly reduced. And let there be no mistake about it. When he was sentenced, everyone in the room, including his lawyer and the prosecutor, believed that he was subject to a 20-year mandatory minimum and that the guidelines recommended 360 months to life. That's what everyone thought. Exactly. And, in fact, he was subject at that time to the mandatory 20-year minimum, but the guideline range was actually 210 to 262 months. Correct. Okay. And today, with the vacatur of his New Jersey conviction, if he were to be sentenced, well, this gets even more complicated, but the now correct situation is he was subject retroactively, so to speak, to a 10-year mandatory minimum and guidelines of 188 to 235 months. But if the First Step Act were applied to him, he would actually have even lower guidelines than that. Exactly. I think he would be subject to 168 to 210, well below the 240 months that he's been sentenced to. This is a miscarriage of justice in this particular case. When the court sentenced him, everybody in that room, and the record speaks to this, six times in the record, a 36-page sentencing transcript, very short, but on six occasions everybody stated this, you're being sentenced to a 20-year term, because that's the mandatory sentence in this case. The hands were tied here, but now we have a situation where. Well, that's not what the district court said, though, in the original sentencing, right? Because she was asked, even absent the prior felony information, would deem a 20-year sentence based on the guidelines to be reasonable. And she said absolutely. Yes, but she also pointed out that under the guidelines, she felt the guidelines were too high for him. On page 32 of the transcript, she kind of equivocates. On the one hand, she said, you know, life is too much for you, but yes, you know, I think that the 20-year minimum is appropriate. But really, at that point, that's what everybody understood the minimum was. Your argument is that it's a different world when somebody stands before a judge for sentencing and everyone believes that 20 years is mandatory and the guidelines recommend 360 to life, 20 years starts to sound like leniency. But if you were in a world where actually it was 10 years to life as the sentencing range and the guidelines were topped out at 15 years or less, the whole situation would look different. Exactly. The lens that she was looking through at that time was a 20-year minimum lens. We have a new lens now. You know, I need to take off my glasses when I read now. Well, she needed to do that, too. She needed to change. She needed to pivot. When she reviewed this petition, the sentence should have been reduced. Well, can I ask one more question, though, about what happened below on the petition? The district judge still thought that he was a career offender and that it was 360 to life as the guideline, right? No one's conceded that. That that's wrong. But was it argued to her that that was incorrect? Was that argued in the district court? No one argued that. And was he pro se at that time? Yes, he was pro se. And what happened was after her decision came down, when he sought a certificate of appealability, he brought up the career offender and the certificate of appealability was granted. And you were appointed at that point by us. I was appointed. And I have to say that Mr. Reed helped in his own case. And this is a case that needs to be remanded. And I would also ask in this particular case that it be remanded to a different district judge. But why is that? I mean, assume that we agreed with you that there was error here. Judge Seibert, right? That's who it was? Yes. Even this time around, no one even pointed out to her that the guideline, career offender guideline, did not apply. The assumption was still that, yes, it's only a 10-year mandatory minimum, but that's kind of a technicality because the government just picked one of many possible alternatives for prior felony information. So really it's like he had. He was eligible for a 20-year mandatory minimum, in effect. And the guidelines are still 360 to life. If you are right and we remand and correct that error, why would we assume that the judge would not be capable of looking at the case, as you put it, through the appropriate lens on remand? And I'll tell you why. And I know it's unusual and unique. But when the Court was talking to Mr. Reed about the sentence, she said, she talked about the trial, which she presided over, and she said, I recall vividly you cooking up a batch of crack, and then she said, the distribution of crack has ruined your neighborhood and ruined many lives, and you are going to be held responsible for it. Yes, but that may be right. She would be entitled, and so would any other judge who inherited the case, be entirely within his or her rights in considering that fact. And some new judge would go back and read the trial transcript, or such portions as the government cited to him or her, and would have that same information available. And with all due respect, I've read the transcript, too. And quite frankly ---- But you don't have the commission. I don't see evidence of that. I think it was disproportionate. Well, Ms. Alvey, speaking of pivoting, let me pivot for a moment. But it's consistent with what we've been talking about. What exactly do you want us to do? What is the decree that you're asking of us? I'm asking you to remand this matter. With what directions, if any? With directions to reduce the sentence to an appropriate ---- Well, wait, to reduce it, we don't sentence. We don't decide what's an appropriate sentence. What we could do, I suppose, is to reverse the denial of habeas corpus, order that the Court vacate the previous sentence and resentence. Yes. Yes. Okay. That is exactly what I want. Is that all you have to say in response to my question? It is. As opposed to simply acknowledging what Judge Lynch said? Yes, Your Honor. You're adopting Judge Lynch's views on this? I am. Let me ask you, are you aware of any practice or tradition in the Eastern District of automatically, on such a remand, referring this to another judge? There's a long history, as you may know, over the decades about the directions from time to time of the Court of Appeals that a matter be sent to another judge. It is a sort of ---- You can see immediately that there's a suggestion, implicit suggestion of the judge not being able to do the job on remand. And so the Eastern District has been reported to have a certain tradition, and Ms. Corkery and her colleague will perhaps be able to enlighten us on that. In other words, it may be that if there were such a remand, it would automatically go to somebody else. So we wouldn't have to say anything on that score. But you wish us, even if there is such a tradition you would like or new practice, you want us to direct this to be taken away from Judge Sabour? I would ask that in this case. All right. Thank you. Good morning, Your Honors. May it please the Court, my name is Charlie Rose. I'm the Assistant United States Attorney from the Eastern District of New York. I appeared on behalf of the government at the trial. I appeared on behalf of the government on the direct appeal of the conviction of sentence, and I also appeared in the district court on the petition. Government respectfully submits that the defendant cannot show that they carry the burden of a fund ---- showing a fundamental defect that inherently results in a complete mischaracter justice. The defendant was convicted at trial of eight separate counts. One of the conspiracy, which had the mandatory minimum increased by the prior felony information, and seven substantive drug trafficking counts, none of which had the mandatory minimum of the 20 years. At sentencing, counsel just said she wasn't in the room, I was in the room. And the court at that time sentenced the defendant to a lawful sentence on each and every count of 20 years, with the counts that didn't have the mandatory minimum of 20 years also getting 20 years on the substantive counts. And what inference do you draw from that, if any? The inference would be that the court, in its proper assessment, in the individualized assessment of the 3553A factors, after seeing the evidence at trial, and also evaluating the party's requests at sentencing, that it felt that based on the 3553A factors that a 20-year sentence was appropriate on all counts. Do you think that the judge made a conscious decision to discriminate among the counts and decided specifically that 20 years was appropriate both for the mandatory minimum and for the others? I don't. Under the guidelines, don't you calculate a sentence and then apply whatever you need to to the ---- the counts don't matter anymore, do they? Well ---- Haven't mattered since 1984. Haven't mattered to the extent that one certainly vacates, you know, one of the convictions, then certainly the conviction would stand on the other ones. Here we have a vacater of the prior felony information. So to the extent that I don't believe that was foreseen by the court, but I do believe that in consideration of the guidelines level, the court made the decision that 20 years would be appropriate. Indeed, as you just said, in consideration of the guidelines level. Right. But now you've conceded that the guidelines level that the district court believed applied in 2012, whatever it was when the sentence took place, was wrong, and that the guidelines level that the district court still thought applied when she considered the habeas petition is the same one, which you concede is wrong. Your Honor, I don't believe that the guidelines level was incorrect at the time of initial sentencing. I believe that that was appropriate at the initial sentencing. The defendant subsequently vacated the conviction. And here we're on a point. But that's not why, at least according to your adversary, this was not — it's not just the fact that this conviction was vacated. It's the fact that this conviction was the only strike, as it were, because it was the only narcotics offense where distribution was an element. And therefore, the other strikes that added up to career offender didn't qualify. I thought that was the argument, and that was the reason why you agree that the 360 to life was incorrect from the get-go. No, Your Honor. With respect to the — there were four underlying felony convictions, all of which qualified under A51 as a felony drug offense that could have enhanced the sentence on all of the counts. Could have been the basis for a prior felony information that would raise the mandatory minimum. Correct. Those — But the career — I'm focused on the career offender guidelines. Yes. So while they would have qualified for enhancement under the prior felony information, only one — or, actually, only two of them, the initial conviction — I believe it's the initial New York conviction, the 1990 conviction, and the 1993 conviction qualified. Right. So there were not three strikes. So there were the two strikes that you needed for career offender status. Once the vacater of the New Jersey conviction, then yes. Then on the petition, to the extent that there's no longer that initial — there's two. There's only one now. So there's only one that could qualify as a controlled substance offense. So based on that, the guidelines are now he is no longer a career offender. So let me ask you, am I right that at the time of the 2255, his guidelines really were 168 to 210? If the Court recalculated the guidelines, giving credit, say, parallel to a 3582 inquiry, the two-step inquiry, is he entitled to a reduction or — and then what — you know, then the Court can make the individual assessment. You don't disagree that would be the guidelines? My understanding from — yes, that the guidelines now would be different. But — And then she gave him 240 months again, right? So that would be a variance upward. Right. Well, the — Does that make a difference? To the extent that it factors into whether the Court fashioned the original sentence with things in mind to take into consideration all of the 3553a factors. But she varied downward. Correct. She varied downward by 10 years. And now, both at sentencing, she deemed that she wouldn't go any further below. And on the — on the decision on the habeas, the Court also indicated that even assuming the PFI was — But she didn't know about the new guideline range or the absence of career offender at that time. I don't believe she did, because obviously the opinion comes out in error in that regard. However, that, as this Court has held, that's not necessarily sufficient. On a habeas petition, a guidelines error, as the district court did on the habeas, is not necessarily sufficient to show that there's a complete miscarriage of justice. But there's also the other problem, that the mandatory minimum is now different, right? It's the two things compounding each other. You don't have a case like that before, do we? Well, Your Honor, no. Once we put aside the prior felony information, then we no longer have to worry about the 20 years. However, that would have been more of an issue on direct appeal, my sense is. But we throw around these numbers, you know, like, oh, 10-year mandatory minimum. Oh, 20-year mandatory minimum. Oh, 360 months to life. And then once those are in play in a sentence, these all seem to be reasonable. The judge is required to consider the guidelines, 360 to life, in looking at what the sentence should be. She's required to pay attention to that. She doesn't have to follow it, but she's required to pay attention to it. And there it sits. Congress has adopted a 20-year mandatory minimum. When you're looking at that, it looks like, well, I mean, he's not as bad as all that. I'll give him the bottom of the available sentences. But it's a very different. Then suddenly, you know, these numbers all turn out to fade away because they're sort of arbitrary and a little tweak here and a little tweak there. And suddenly you're looking at the same guy with the same actual record of what he's done, both in terms of the offense conduct here and the criminal record. And now suddenly our fabulous guidelines are telling us really he could get less than 15 years as a sentence instead of 30 to life. I mean, you know, it's – and now we're also in a world where Congress and the Sentencing Commission are taking away some of these sentences. And you're basically saying stick to the sentence that was given at a different time in a different world when everybody was wrong about what these numbers actually were because – why exactly? Because it's not a miscarriage of justice. I mean, after all, I'm not saying 20 years is a miscarriage of justice by any means. I don't know. I haven't studied the sentencing – the trial transcript. I haven't looked at the details of his criminal record. It's not my job to sentence him. Maybe the judge will look at those things and think 20 years is still the right sentence. And I don't see anything that on the face of it says that's unreasonable. But it's very different if the judge imposes that sentence in full knowledge of what the actual legal landscape is than if she imposes it under – I think that's different than if she imposes it in a world where she thinks that between 20 and 30 years is the effective range. And everybody in the room knew it was going to be a 20-year sentence. That's probably why the defense counsel didn't bother to research whether or to argue for whether the guidelines were right or wrong. There was nothing to argue about. It was going to be 20 years. I'm sorry. It's sort of a speech. Put a question mark at the end of it and say whatever you want to say. I'm sorry. To respond to Your Honor's speech, I would just submit that the guidelines range that the court operated under at the sentencing was 360 to life. The court used its discretion to go down from there. It was not – yes, Your Honor. Go ahead. It was not just basing its opinion on the unwrote adherence to those guidelines. The court made the assessment, watched all the evidence at trial, saw all the factors and made that determination. That is reflected in the record of the sentencing. Then on the appeal, although the district court made an error in recalculating the guidelines, the court still said, assuming that the PFI no longer applies, based on the 3553A factors, I would impose this 20-year sentence again. So again, what – If that's right, if that's a good prediction of what the judge might do, then what is the cost of asking the court to rethink about – think about it again in light of what we now know the true legal situation is, other than – and this is not a small thing – some imposition on the district court's time. It's not a small thing, but compared to whether this man is going to spend 20 years in prison or 15 years in prison, a couple of hours of looking back at the record again and being sure that this is what the judge really wants to do seems like a relatively minor cost. Your Honor, putting aside the finality of judgments, I recognize that it wouldn't necessarily be the most onerous burden to place on the district court. However, the district court at sentencing evaluated all this material at the outset. It then revisited the issue on the habeas petition. So again, you're – Not all the material. Not all the material, but it was aware that the mandatory minimum no longer applied. Not the career offender.  Because I have a couple of simple questions, almost clerical in nature. There was a reference earlier to the defendant being pro se at some point, and that may be true, but I take it that Ms. Marianne Rantala appeared as counsel at sentencing, right? Yes, Your Honor. So at sentencing, he was represented. Is that correct? Correct. Right. Secondly, I asked opposing counsel about the practices of the Eastern District of New York. These are things that perhaps are only sotto voce or whispered in the darkness in courtrooms. What do they do when there's a remand of a sentence and that there's actually a rule or practice that it goes to another judge? Can you enlighten us on that? Can you put the light up or light a candle for us, Mr. – I'll do my best, Your Honor. I'm generally not privy to the judges' intermocking nature. Is Ms. Corkery aware of any such practice? Judge, I believe at one point there might have been a local rule that provided that it would be remanded to a different judge. But frankly, based on my knowledge, it would be more under-reached than the practice. I'm not sure I deserve to find that out. Thank you. It's important that we have the full picture. In the same way, we want to have the full picture of everything that was at play at sentencing. Let me ask you finally for your personal assessment based on your experience in this case. Is there any doubt in your mind that Judge Sabert is likely to come to the same conclusion upon remand? My impression – I'm not asking you to be a clairvoyant. I'm just asking – Understood, Your Honor. My impression is that the judge has already ruled on this twice with due caveats that if the mandatory minimum didn't apply, she would have imposed a 20-year sentence if the career – Which is a characteristic sentencing device nowadays, right? I take your – I've considered A, B, and C. But regardless of – especially the guidelines, under any circumstances, I would impose a particular sentence, right? Certainly, it's more de rigueur than individualized, but I think it doesn't carry any less weight by the court saying that that's what they would do. Right. All right. Thank you very much. Thank you. We'll hear from Ms. Halligan. Thanks very much. All right. Very well argued by both sides, and we appreciate it very much.